Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel VIII

| | | |
|---|---|---|
| CYBELE ENEIDA DELGADO RIVERA<br>Apelante<br><br>v.<br><br>LORRAINE RIVERA ROSADO<br>Apelada | KLAN202500341 | *Apelación* procedente del Tribunal de Primera Instancia, Sala de Bayamón<br><br>Caso Núm. BY2024CV04214<br><br>Sobre:<br>Injunction Preliminar y Permanente; Daños y Perjuicio |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

Adames Soto, Juez Ponente

## **SENTENCIA**

En San Juan, Puerto Rico, a 31 de julio de 2025.

Comparece la Sra. Cybele Eneida Delgado Rivera (señora Delgado Rivera o parte apelante), mediante recurso de apelación, solicitando la revocación de una *Sentencia* emitida por el Tribunal de Primera Instancia (TPI), el 27 de febrero de 2025. Mediante esta, el foro primario desestimó la *Demanda* instada por la señora Delgado Rivera, al juzgar que se incumplía el estándar de plausibilidad de las alegaciones allí contenidas, al contener asuntos ya dirimidos en el 2008, mediante el caso civil Núm. DPE2008-1372 (404), el cual fue desestimado con perjuicio. Se incluyó como fundamento para la desestimación, además, que la controversia fue objeto de una determinación previa bajo la Ley de Remedios Provisionales, *supra*, por la Sala Municipal en el caso civil Núm. BYL1402022-5193, y la causa de acción en daños y perjuicios estaba prescrita.

Examinados los asuntos presentados, hemos determinado *Confirmar* la *Sentencia* apelada, aunque por fundamentos distintos.

NÚMERO IDENTIFICADOR

SEN2025_____

## I. Resumen del tracto procesal

El 19 de julio de 2024 la señora Delgado Rivera presentó una *Demanda* contra la Sra. Lorraine Rivera Rosado (señora Rivera Rosado), solicitando una orden de *injunction* preliminar y, en su día permanente, para la remoción de los árboles sembrados por esta última en la colindancia con su propiedad. Junto a ello, también solicitó una indemnización por los daños a la propiedad y angustias mentales a su persona causados por tales árboles.

A raíz de ello, el foro primario le ordenó a la señora Delgado Rivera que expusiera las razones por las cuales no se debía tramitar el caso como uno ordinario (en lugar de un *injunction*), habida cuenta de que las alegaciones hacían referencia a hechos acaecidos durante los años 2022 y 2023.

En respuesta, el 24 de julio de 2024, la parte apelante presentó una *Moción en Cumplimiento de Orden* aduciendo que, en septiembre de 2022, cayó una rama de tamaño considerable en su patio, por lo que instó una querella bajo la Ley Núm. 140 del 23 de junio de 1974, *infra*, a la cual se le asignó el núm. BYL1402022-51936. Como resultado, el 17 de enero de 2023, enmendada el 7 de marzo de 2023, el foro primario ordenó la poda de los árboles. Sin embargo, el 1 de febrero de 2023, cayó una segunda rama de tamaño considerable en su patio. Llamó la atención, además, a que el remedio provisional obtenido tenía duración de un año, habiendo vencido el 7 de marzo de 2024.

Continuando con el contenido de la *Moción* bajo discusión, la apelante también aseveró que persistía la situación de peligro que enfrentó desde los años 2022 y 2023. Abundó que, contrario a lo recomendado por el Departamento de Recursos Naturales (DRNA), la parte apelada no había certificado que los árboles no representaban peligro para la vida y propiedad. Por consiguiente, y en aras de evitar daño irreparable a su vida, y al de las personas que dan mantenimiento a su patio, le solicitó al TPI que tramitara la acción bajo el remedio rápido concebido en el *injunction* preliminar y permanente.

Mediante moción, la señora Delgado Rivera reiteró la petición recogida en el párrafo que antecede.

Evaluada las referidas mociones de la apelante, el foro de instancia dio por cumplida su *Orden* y señaló vista de *injunction* para el 27 de agosto de 2024.

Es entonces cuando, el 26 de agosto de 2024, la señora Rivera Rosado presentó una *Moción de Desestimación de la Solicitud de Interdicto Preliminar/Permanente y Moción de Desestimación de la Demanda.* En esta, argumentó que procedía la desestimación de la *Demanda* por: 1) aplicaban las doctrinas de cosa juzgada e impedimento colateral por sentencia; 2) falta de partes indispensables; 3) prescripción de las alegaciones por daños; 4) inexistencia de alegaciones que justificaran la concesión de un remedio y; 5) inexistencia de daños concretos y palpables que justificaran el recurso extraordinario del *injunction,* toda vez que la *Demanda* se basaba en hechos prescritos y especulativos.[1]

A causa de la presentación de la moción dispositiva aludida, el TPI dejó sin efecto la vista de *injuction* pautada para el 27 de agosto de 2024, y, en su lugar, le concedió a la señora Delgado Rivera un término para replicarla.

Por lo cual, la apelante presentó una *Moción en Cumplimiento de Orden.* En lo pertinente, adujo allí que no fue parte en el caso *Consejo de Titulares del Condominio Quintas de Baldwin v. Lorraine Rivera Rosado,* Civil Núm. DPE2008-1372, como tampoco se plantearon las alegaciones correspondientes a los años 2022 y 2023, por lo cual no aplicaba la doctrina de cosa juzgada. Sostuvo, además, que el referido caso BYL1402022-5193 fue un recurso al amparo de la Ley Núm. 140, *infra,* y esta ley expresamente disponía que no constituirá cosa juzgada respecto ninguno de los asuntos adjudicados en la misma, como tampoco impedirá ningún otro trámite judicial reclamando daños y perjuicios u otro derecho.

---

[1] Véase Apéndice 12 del recurso de apelación, pág. 73.

En cuanto a la presunta prescripción de la causa de acción por daños instada, arguyó, en síntesis, que era improcedente, puesto que los árboles seguían plantados en el mismo lugar, y continuaban causándole sufrimientos y angustias mentales, así como daños a su propiedad.

El 2 de octubre de 2024 la señora Rivera Rosado presentó una *R[é]plica a Moci[ó]n en Cumplimiento de Orden [21] y para Reiterar Solicitud de Desestimaci[ó]n de la Demanda.* Esgrimió que la *Demanda* debía ser desestimada al amparo del razonamiento en *Costas Elena v. Magic Sport Culinary Corp.*, 213 DPR 523 (2024), pues no se podía proseguir una causa de acción basada en alegaciones insuficientes bajo el pretexto de que se podrán probar con el descubrimiento de prueba.

Las partes intercambiaron sendas mociones reiterando los argumentos ya aquí resumidos.

Sopesada la petición de desestimación, junto al escrito en oposición, el TPI dictó *Sentencia* acogiendo la moción dispositiva, por tanto, ordenó la desestimación de la *Demanda*. Al así decidir el foro primario razonó que las alegaciones incluidas en la *Demanda* no habían superado el estándar de plausibilidad exigido, además, los daños alegados se encontraban prescritos. Con precisión, el tribunal *a quo* plasmó lo siguiente:

> Al aplicar el derecho vigente a los hechos alegados en la demanda concluimos que los mismos no son suficientes para justificar la concesión de los remedios solicitados en la misma, por lo que no albergamos duda alguna de que se incumple con el estándar de plausibilidad reiterado por nuestro Tribunal Supremo en Costas Elena v. Magic Sport Culinary Corp., supra. Esto, en la medida en que la demanda en el caso de marras contiene alegaciones sobre asuntos ya dirimidos anteriormente en el año 2008 e instados por la asociación de residentes de la cual la demandante es parte. Nos referimos al caso Consejo de Titulares del Condominio Quintas de Baldwin v. Lorraine Rivera Rosado, Civil Número DPE2008-1372 (404) el cual fuera desestimado, Con Perjuicio, por la Honorable Jueza Sylvette A. Quiñones Mari, el 6 de diciembre de 2010, al amparo de la Regla 39.2 (b). Además, esta controversia, fue objeto igualmente de remedios provisionales ya provistos por el Tribunal Municipal a los efectos de aprobar un plan de poda de los árboles en cuestión, según ocurrido el Caso Número Civil BYL1402022-5193.
>
> Por otro lado, de las propias alegaciones de la Demanda se desprende que los daños reclamados por la demandante se encuentran prescritos. Esto, en la medida en que se hace referencia a hechos supuestamente ocurridos el 19 de septiembre de 2022, en el mes de febrero de 2023, el 10 de octubre de 2022 y el 10 de diciembre de

2022, habiéndose instado la presente acción civil el 19 de julio de 2024.[2]

Luego de que la apelante presentara petición de reconsideración ante el TPI, que no fue acogida, decidió acudir ante nosotros mediante recurso de apelación, imputando los siguientes errores:

**PRIMER SEÑALAMIENTO DE ERROR:** ERR[Ó] EL TPI AL DETERMINAR QUE LA DEMANDA NO CON [sic] CUMPLE CON EL ESTÁNDAR DE PLAUSIBILIDAD SEGÚN RESUELTO POR NUESTRO TRIBUNAL SUPREMO EN <u>COSTAS ELENA V. MAGIC SPORT CULINARY CORP.</u>, 2024 TSPR 13, A PESAR DE QUE DE LOS HECHOS BIEN ALEGADOS SURGE QUE LOS ÁRBOLES EN CONTROVERSIA ESTÁN SEMBRADOS A UNA DISTANCIA MENOR A LA PERMITIDA POR LEY, EN CONTRAVENCIÓN AL ARTÍCULO 809 DEL CÓDIGO CIVIL, 31 L.P.R.A. Sec. 8072, LO CUAL CONFIGURA UNA CAUSA DE ACCIÓN CONCRETA, VIGENTE Y UN RIESGO A LA VIDA Y LA PROPIEDAD DE LA APELANTE

**SEGUNDO SEÑALAMIENTO DE ERROR:** ERRÓ EL TPI AL NUNCA EXPRESARSE EN SU SENTENCIA SOBRE LA CAUSA DE ACCIÓN DE SIEMBRA Y REMOCIÓN DE ÁRBOLES Y CONSIDERAR EL CASO COMO UNO LIMITADO A DAÑOS Y PERJUICIOS, YA QUE TOMANDO COMO CIERTAS LAS ALEGACIONES DE LA DEMANDA, LOS ÁRBOLES EN CONTROVERSIA ESTÁN SEMBRADOS A UNA DISTANCIA MENOR A LA PERMITIDA POR LEY Y ASÍ TAMBIÉN LO CERTIFICÓ EL DRNA EN SU INFORME

**TERCER SEÑALAMIENTO DE ERROR:** ERR[Ó] GRAVEMENTE EL TPI AL RESOLVER QUE UN REMEDIO PROVISIONAL BAJO LA LEY 140 LEY SOBRE CONTROVERSIAS Y ESTADOS PROVISIONALES DE DERECHO CONSTITUYE UNA ADJUDICACIÓN EN LOS MÉRITOS Y JUSTIFICA LA DESESTIMACIÓN DEL CASO, A PESAR DE QUE LA REFERIDA LEY 140 ESTABLECE EXPRESAMENTE QUE UN ESTADO PROVISIONAL DE DERECHO NO CONSITUYE COSA JUZGADA

**CUARTO SEÑALAMIENTO DE ERROR:** ERRÓ EL TPI AL APLICAR LA DOCTRINA DE COSA JUZGADA E IMPEDIMENTO COLATERAL POR SENTENCIA SIN QUE CONSTE EN EL EXPEDIENTE ANÁLISIS ALGUNO NI ADJUDICACIÓN EN LOS MÉRITOS EN PLEITO ANTERIOR, Y SIN CONSIDERAR LAS EXCEPCIONES APLICABLES POR INTERÉS PÚBLICO O INJUSTICIA MANIFIESTA.

**QUINTO SEÑALAMIENTO DE ERROR:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR PRESCRITA LA ACCIÓN DE DAÑOS Y PERJUICIOS, SIN CONSIDERAR QUE LA PRESENCIA CONTINUA DE ÁRBOLES PLANTADOS EN VIOLACIÓN DE LEY CONSTITUYE UNA CAUSA DE ACCIÓN POR DAÑOS CONTINUOS, RENOVADA CONSTANTEMENTE POR EL CRECIMIENTO Y DESPRENDIMIENTO DE RAMAS Y HOJAS, ADEMÁS DE LA INVASIÓN CONTINUA DE RA[Í]CES Y QUE AFECTAN DE FORMA CONTINUA A LA APELANTE

---

[2] Apéndice 29 del recurso, pág. 166.

Oportunamente, la señora Rivera Rosado presentó *Alegato en Oposición a Apelación.*

## II. Exposición de derecho

a.

Nuestro esquema procesal no exige requisitos complicados para la redacción de una acción judicial. *Rivera Candela v. Universal Insurance Company,* 214 DPR 1007 (2024); *León Torres v. Rivera Lebrón,* 204 DPR 20, 40 (2020). A esos fines, la Regla 6.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 6.1, 32 LPRA Ap. V, R. 6.1, regula los elementos concernientes a las alegaciones, a saber: (1) una relación sucinta y sencilla de los hechos demostrativos de que la parte peticionaria tiene derecho a un remedio, y (2) una solicitud del remedio a que crea tener derecho. Podrán, también, ser solicitados remedios alternativos o de diversa naturaleza.

Basta redactar una información inicial escueta de los hechos pues las alegaciones serán ampliadas "como resultado de los procedimientos posteriores de descubrimiento de prueba". *Rivera Candela v. Universal Insurance Company,* supra, (citando a J.A. Echevarría Vargas, *Procedimiento civil puertorriqueño,* 3a ed. rev., Bogotá, Ed. Nomos, S.A., 2023, pág. 92). Por tanto, "en la demanda no hay que especificar bajo qué disposición legal se reclama, basta con que de los hechos que esquemáticamente se alegan surja una causa de acción bajo cualquier ley". *Íd.*

Lo esencial es notificar a la parte adversa, a grandes rasgos, sobre cuáles son las reclamaciones en su contra para que pueda comparecer si así lo desea. *Torres, Torres v. Torres et al.,* 179 DPR 481, 501 (2010); *Sánchez v. Aut. de los Puertos,* 153 DPR 559, 569-570 (2001). A esos efectos, el documento relativo a la demanda debe incluir un mínimo de detalle que informe sobre los alegados actos lesivos que causaron el alegado perjuicio. *Rivera Candela v. Universal Insurance Company, supra; León v. Rest. El Tropical,* 154 DPR 249, 262 (2001). Es decir, debe contener un grado

suficiente de información sobre las imputaciones que le permita a la parte demandada entender la sustancia de lo que debe defender. *Íd.*

No obstante, cuando la reclamación judicial instada carezca de alegaciones específicas o suficientes, la parte adversa tiene el derecho de solicitar la desestimación a tenor con la Regla 10.2(5) de Procedimiento Civil, *supra*, 32 LPRA Ap. V, R. 10.2(5). Véase, también, *Eagle Security v. Efrón Dorado,* 211 DPR 70, 83 (2023). El precitado inciso reglamentario dispone que procede la desestimación por dejar de exponer una reclamación que justifique la concesión de un remedio. 32 LPRA Ap. V, R. 10.2(5). De tal modo, se viabiliza que la parte demandada pueda fundamentar la desestimación invocando la defensa de que la petición judicial deja de exponer una reclamación que justifique la concesión de un remedio. *Banco Popular de Puerto Rico v. Cable Media of Puerto*, 2025 TSPR 1; 215 DPR ___ (2025).

Ahora bien, como norma general, no procede la desestimación salvo se deduzca con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que puedan ser probados en apoyo a su reclamación. *El Día, Inc. v. Mun. de Guaynabo*, 187 DPR 811, 821 (2013); *Consejo Titulares v. Gómez Estremera*, 184 DPR 407, 423 (2012). Por tanto, el tribunal tiene el deber de interpretar las alegaciones de manera conjunta y liberalmente a favor de la parte demandante para facilitar el amparo judicial. *Eagle Security v. Efrón Dorado*, supra, pág. 85. Le compete "ponderar si, a la luz de la situación más favorable al demandante y resolviendo toda duda a su favor, la demanda es suficiente para establecer una reclamación válida". *Íd*. Este análisis evita que un litigante quede privado de su día en corte, que es una medida procedente solo en casos extremos. *Costas Elena y otros v. Magic Sport Culinary Corp. y otros*, 213 DPR 523, 534 (2024); *Rosario v. Nationwide Mutual*, 158 DPR 775, 780 (2003).

Conviene señalar que, el Tribunal Supremo de Puerto Rico en *Cobra Acquisitions v. Mun. Yabucoa et al.*, 210 DPR 384, 397 (2022), discute el

examen aplicable a las mociones fundamentadas en la insuficiencia de las alegaciones:

> al interpretar de manera conjunta las citadas Reglas 6.1 y 10.2, podemos colegir que cuando se pretende desestimar la totalidad de una demanda que solicita remedios alternativos, se debe examinar si las alegaciones sustentan la concesión de dichos remedios. Es decir, como las alegaciones pretenden bosquejar las distintas reclamaciones y proveer a cada una de ellas unos remedios, una moción de desestimación sobre la totalidad de la demanda debe mover la conciencia del juzgador a concluir que, si al dar por cierto las alegaciones bien hechas, no existe remedio al que la parte tenga derecho. El juzgador deberá auscultar, en ese sentido, si la parte demandante no tiene derecho alguno a que se ventile el pleito, ya sea al amparo del remedio principal o del alternativo.

Una vez el juzgador analice ponderadamente que, de manera principal o en la alternativa, no existe remedio alguno en derecho, se encontrará en posición para decidir si desestima total o parcialmente una demanda. *Comisión v. González Freyre et al.*, 211 DPR 579, 615 (2023). A esto se ha incorporado el estándar de plausibilidad sobre las alegaciones, según el cual, de las tales no ser *plausibles* también serán causa para desestimar la acción judicial, pues no puede permitir que proceda una demanda insuficiente bajo el pretexto de que se probarán las alegaciones conclusorias con el descubrimiento de prueba. *Costas Elena y otros v. Magic Sport Culinary Corp. y otros, supra,* pág. 534 (citando a R. Hernández Colón, *Práctica jurídica de Puerto Rico: Derecho Procesal Civil*, 6.ta ed., San Juan, Ed. LexisNexis, 2017, pág. 307).[3] En cambio, si se concluye que las alegaciones cumplen con el estándar de suficiencia, le corresponde denegar la petición de desestimación.

b.

El *injunction* es un remedio *in personam* dirigido a la parte demandada y no contra sus bienes ni contra la cuestión objeto del interdicto. *Díaz*

---

[3] El profesor Hernández Colón discute el caso *Bell Atlantic Corp. v. Twombly*, 550 US 544 (2007), en el cual el foro supremo federal analiza la Regla 8 de Procedimiento Civil, equivalente a nuestra Regla 6.1 de Procedimiento Civil (2009). A la luz de este dictamen explica que al evaluar la plausibilidad de las alegaciones no es necesario exponer alegaciones bien elaboradas y detalladas. Ahora bien, puntualiza que las alegaciones deben contener una relación fática suficiente, que aceptada como cierta establezca que la reclamación del remedio es suficiente en su faz, es decir, que guíe al juzgador a hacer una inferencia razonable de que el demandado es responsable de la conducta alegada. Agrega que en el referido caso "se describió el estándar plausibilidad como aquel que requiere hechos suficientes que logren una expectativa razonable de que en el descubrimiento de prueba se revelará la evidencia que lo demuestre". R. Hernández Colón, *Práctica jurídica de Puerto Rico: Derecho Procesal Civil*, supra, pág. 280.

*Vázquez et al. v. Colón Peña et al,* 214 DPR 1135 (2024). Constituye un recurso extraordinario procedente del sistema anglosajón —conocido también como el sistema de equidad— e incorporado a nuestro ordenamiento jurídico en virtud de legislación. R. Hernández Colón, *Práctica Jurídica de Puerto Rico, Derecho Procesal Civil,* supra, pág. 588.

Actualmente el Código de Enjuiciamiento Civil y la Regla 57 de Procedimiento Civil, 32 LPRA Ap. V, rigen los aspectos sustantivos y procesales del *injunction. Asoc. Vec. v. Caparra v. Asoc. Fom. Educ.,* 173 DPR 304, 318-319 (2008). El Artículo 675 del Código de Enjuiciamiento Civil, 32 LPRA 3421, en particular define el *injunction* de la siguiente manera:

> El *injunction* es un mandamiento judicial expedido por escrito, bajo el sello de un tribunal, por el que se requiere a una persona para que se abstenga de hacer, o de permitir que se haga por otras bajo su intervención, determinada cosa que infrinja o perjudique el derecho de otra.

Este recurso se caracteriza por su perentoriedad dirigida a evitar la producción de un daño inminente o a restablecer el régimen de ley quebrantado por una conducta opresiva, ilegal o violenta. *Díaz Vázquez et al. v. Colón Peña et al,* supra; *Mun. de Loíza v. Sucns. Suárez et al.,* 154 DPR 333, 366 (2001). A esos fines, existen tres modalidades de este remedio: (1) el entredicho provisional, (2) el *injunction* preliminar, y (3) el *injunction* permanente. *Next Step Medical v. Bromedicon et al.,*190 DPR 474, 486 (2014). En el presente caso nos limitaremos a abordar estas dos últimas categorías. Veamos.

Al decidir si expide un *injunction* preliminar, el tribunal deberá evaluar los siguientes criterios fijados en la Regla 57.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 57.3:

> 1. La naturaleza del daño a que está expuesto la parte peticionaria;
>
> 2. la irreparabilidad del daño o la inexistencia de un remedio adecuado en ley;
>
> 3. la probabilidad de que la parte promovente prevalezca;
>
> 4. la probabilidad de que la causa se torne en académica;
>
> 5. el impacto sobre el interés público del remedio que se solicita, y

6. la diligencia y la buena fe con que ha obrado la parte peticionari[a].

La expedición de este remedio descansa en la sana discreción judicial ejercida al ponderar las necesidades y los intereses de las partes involucradas en la controversia. *Mun. de Ponce v. Gobernador*, 136 DPR 776, 790-791 (2001). Ello, pues, el propósito fundamental del *injunction* preliminar o *pendente lite* es: (1) mantener el *status quo* hasta que se celebre el juicio; (2) impedir que la situación se torne académica o; (3) evitar que se ocasionen daños mayores mientras perdura el litigio. *VDE Corporation v. F & R Contractors*, 180 DPR 21, 41 (2010); *Rullán v. Fas Alzamora,* 166 DPR 742, 764 (2006).

En cambio, el *injunction* amerita considerar los siguientes criterios: (1) si el demandante ha prevalecido en un juicio en sus méritos; (2) si el demandante posee algún remedio adecuado en ley; (3) el interés público involucrado, y (4) el balance de equidades. *Plaza Las Américas v. N & H*, 166 DPR 631, 644 (2005). Ahora bien, procede su concesión si la parte que lo solicita demuestra que no tiene ningún otro remedio en ley para evitar un daño. *Mun. de Loíza v. Sucns. De Suárez et al.*, 154 DPR 333, 367 (2001). Véase, también, *Senado de PR v. ELA*, 203 DPR 62, 72 (2019). En ese sentido, es un daño irreparable aquel que: (1) no puede ser adecuadamente satisfecho mediante la utilización de los remedios legales disponibles; (2) no puede ser apreciado con certeza; (3) ni debidamente compensado por cualquier indemnización que pudiera recobrarse en un pleito en ley. *Ind. PR v. JP y AAA*, 142 DPR 656, 681 (1997).

Sobre este último requisito, el Tribunal Supremo de Puerto Rico emitió el siguiente pronunciamiento al discutir el *injunction* permanente:

> Intrínseca a la naturaleza del *injunction* es su necesidad como medio para prevenir perjuicios inminentes o daños irreparables. Este tipo de acción se dirige contra actos futuros que amenazan ser cometidos o que se anticipa que serán cometidos. Importantemente, hay que detectar si la acción connota o no un agravio de patente intensidad al derecho del individuo que reclame una reparación urgente. *Buxó Santiago v. ELA et als.*, 2024 TSPR 130, 215 DPR __ (2024) (citas omitidas).

c.

El Artículo 1536 del Código Civil de 2020, 31 LPRA sec. 10801, establece que "[l]a persona que por culpa o negligencia causa daño a otra, viene obligada a repararlo". A tenor, para conceder la reparación de un daño es necesario que la parte promovente de la acción demuestre lo siguiente: (1) el acto u omisión culposa o negligente; (2) la relación causal entre el acto u omisión culposa o negligente; y (3) el daño real causado al reclamante. *Nieves Díaz v. González Massas*, 178 DPR 820, 843 (2010).

El Tribunal Supremo de Puerto Rico ha reconocido y distinguido varios tipos de daños. Entre ellos, se encuentran los daños continuos o continuados, los cuales fueron definidos por nuestro alto foro como:

> aquellos producidos por uno o más actos culposos o negligentes imputables al actor, coetáneos o no, que resultan en consecuencias lesivas ininterrumpidas, sostenidas, duraderas sin interrupción, unidas entre sí, las cuales al ser conocidas hacen que también se conozca por ser previsible el carácter continuado e ininterrumpido de sus efectos, convirtiéndose en ese momento en un daño cierto compuesto por elementos de daño actual (aquel que ya ha acaecido) y de daño futuro previsible y por tanto cierto. *Rivera Ruiz v. Mun. de Ponce*, 196 DPR 410, 417 (2016).

Recientemente, en *Landrau Cabezudo v. Puertos et al.*, 2025 TSPR 7, 215 DPR ___ (2025), el Tribunal Supremo precisó lo que sigue sobre los daños continuados:

> [a]unque se refiere a daños, se ha clarificado que lo que en realidad es continuo en estos escenarios es el acto u omisión que produce el daño. Hemos explicado que los daños continuados se tratan de lesiones causadas por una conducta torticera continua que genera una sola causa de acción que comprende todos los daños ciertos, tanto los actuales como los previsibles en el futuro. En estos casos lo continuo o progresivo no es el daño o perjuicio ocasionado, sino la causa que lo origina y que produce resultados razonablemente previsibles. (Citas omitidas).

En suma, estos tipos de daños se distinguen por ser derivados de un acto ilícito como unidad y no como una pluralidad de daños particulares. *Toro Rivera v. ELA*, 194 DPR 393, 417 (2015).

Lo anterior es de importancia al considerar la figura de la prescripción extintiva. La prescripción extintiva es una figura jurídica regulada en el Artículo 1189 del Código Civil de Puerto Rico, el cual dispone que "es una defensa que se opone a quien no ejercita un derecho o acción dentro del

plazo de tiempo que la ley fija para invocarlo. Las acciones prescriben por el mero lapso del tiempo fijado por ley". 31 LPRA sec. 9481. A su vez, el Tribunal Supremo ha expresado que es una institución de derecho sustantivo, más no procesal, que extingue el derecho a ejercer determinada causa de acción. Véase *Meléndez Lebrón v. Rodríguez Casiano*, 203 DPR 885, 892 (2019) (Sentencia); *Rivera Ruiz v. Mun. de Ponce*, 196 DPR 410, 415 (2016).

Para evitar el efecto que tiene la prescripción sobre el derecho para ejercer una causa de acción, nuestro ordenamiento civil reconoce tres formas de interrumpir el transcurso del término, a saber:

> (a) mediante la presentación de la demanda judicial o de la reclamación administrativa o arbitral por el acreedor contra el deudor, en resguardo del derecho que le pertenece; y en el caso de acciones disciplinarias, por la presentación de la queja; (b) por una reclamación extrajudicial hecha por el acreedor, dirigida al deudor; o (c) por el reconocimiento de la obligación por el deudor.

> Producida la interrupción, comienza nuevamente a transcurrir el cómputo del plazo prescriptivo. Artículo 1197 del Código Civil de Puerto Rico, 31 LPRA sec. 9489.

Así pues, salvo que se produzca la interrupción mediante alguna de las formas indicadas, el término prescriptivo para una acción en daños y perjuicios es de un (1) año, conforme al Artículo 1204 del Código Civil, 31 LPRA sec. 9496. Sin embargo, para casos de reclamaciones extracontractuales, se ha reconocido la teoría cognoscitiva del daño para determinar el momento en que comienza a decursar el término aludido. Conforme a ésta, el término prescriptivo comienza a transcurrir una vez el perjudicado conoció, o debió conocer, que sufrió un daño, quién se lo causó, así como los elementos necesarios para ejercitar efectivamente su causa de acción. *Maldonado Rivera v. Suárez*, 195 DPR 182, 194 (2016); *COSSEC et al. v. González López et al.*, 179 DPR 793, 806 (2010).

c.

La Ley Núm. 140 de 23 de julio de 1974, según enmendada, conocida como Ley Sobre Controversias y Estados Provisionales de Derecho, 32 LPRA sec. 287 *et seq.,* (Ley Núm. 140), tiene como propósito establecer un

procedimiento de ley rápido, económico y eficiente para la adjudicación provisional de controversias. *Depto. de la Familia v. Ramos*, 158 DPR 888, 897 (2003). Cónsono con ello, dentro de sus facultades los jueces municipales podrán "intervenir, investigar, ventilar y resolver provisionalmente controversias a solicitud de parte interesada". 34 LPRA sec. 2872. A su vez, el Artículo 2 de la Ley Núm. 140, *Íd.*, dispone qué tipo de asuntos se podrán atender bajo dicho estatuto:

> A. Controversias sobre colindancias y derecho de paso y controversias entre vecinos que afecten la convivencia y el orden social.
>
> [...]
>
> J. Controversias en las cuales se alegue la existencia de perturbaciones que fueren perjudiciales a la salud o a los sentidos, o que interrumpan el libre uso de la propiedad, de modo que impidan el cómodo goce de la vida o de los bienes, de las que dan lugar a una acción bajo el Artículo 277 del Código de Enjuiciamiento Civil, según enmendado, conocido como Ley sobre Perturbación o Estorbo.
>
> [...]

En lo que concierne al caso ante nosotros es de importancia reconocer que el Artículo 5 de la Ley Núm. 140, 32 LPRA sec. 2875, expresamente dispone lo que sigue:

> [u]na orden resolviendo una controversia y fijando un estado provisional de derecho, según este capítulo, será inapelable, **pero no constituirá cosa juzgada respecto a ninguno de los puntos adjudicados en la misma ni impedirá ningún otro trámite judicial reclamando daños y perjuicios u otro derecho**. (Énfasis provisto).

d.

El efecto de la doctrina de cosa juzgada es que la sentencia decretada en un pleito anterior impide que en un pleito posterior se litiguen entre las mismas partes y sobre la misma causa de acción y cosas, las cuestiones ya litigadas y adjudicadas, así como aquellas que pudieron haber sido litigadas y adjudicadas con propiedad en la acción previa. *AAA v. UIA*, 199 DPR 638, 662 (2018). Dicha doctrina resulta valiosa y necesaria para la sana administración de la justicia, pues por un lado vela por el interés gubernamental de que se finalicen los pleitos, y por el otro, se interesa en no

someter a los ciudadanos a las molestias de tener que litigar dos veces una misma causa. *Fonseca et al. v. Hosp. HIMA*, 184 DPR 281, 294 (2012).

Sobre esto último, la doctrina se fundamenta en el interés general de evitar que una parte sufra, innecesariamente, las molestias que conlleva someterse a un procedimiento judicial adicional, particularmente debido a los costos adicionales que supone para las partes y el tribunal volver a litigar un asunto ya resuelto por otro foro. *Martínez v. ELA*, 182 DPR 580, 587 (2011). Sin embargo, la aplicación de esta doctrina no procede de forma inflexible y automática cuando hacerlo derrotaría los fines de la justicia o las consideraciones de orden público. *Fonseca et al. v. Hosp. HIMA*, supra.

Para que se active la presunción de cosa juzgada en otro juicio, se requiere que entre el caso resuelto mediante sentencia y el caso en que esta se invoca concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad en que lo fueron. *Fonseca et al. v. Hosp. HIMA*, supra, pág. 298.

Lo importante es que la causa o razón para reclamar de ambos pleitos surja de un núcleo común de hechos operacionales, que sea una repetición fáctica o que surja de una misma conducta, transacción u ocurrencia. *Santiago León v. Municipio de San Juan*, 177 DPR 43, 52 (2009). Al determinar si existe identidad de causas de acción, debemos preguntarnos si ambas reclamaciones se basan en la misma transacción o núcleo de hechos. *Martínez Díaz v. ELA*, 182 DPR 580, 586 (2011).

**III.     Aplicación del derecho a los hechos**

a.

En lo esencial, en su primer y segundo señalamiento de error la parte apelante argumenta que sus alegaciones cumplen con el estándar de plausibilidad, pues surge claramente de estas una causa de acción válida contra la parte apelada. En concreto, arguye que, tomando en cuenta que nuestro ordenamiento requiere que las alegaciones sean sucintas y sencillas,

para que le asista el derecho a un remedio bajo el Art. 809 del Código Civil, 31 LPRA sec. 8072, solo tiene que demostrar: 1) que existe una colindancia 2) que hay árboles plantados a una distancia menor a la permitida por ley.

A su vez, en el tercer y cuarto señalamiento de error, esta misma parte esgrime que la *Sentencia* es errónea porque: (1) no especifica los hechos que fueron adjudicados en un caso anterior y los documentos en que se basa para llegar a la conclusión de que la controversia era cosa juzgada, sino que se limita a mencionar que los hechos fueron atendidos en dos casos previos, BYL1402022-5193 y DPE2008-1372, y; (2) la Ley Núm. 140, Art. 5, 32 LPRA sec. 2875, establece que un estado provisional de derecho no constituye cosa juzgada. Así, el caso BYL1402022-5193 no constituye cosa juzgada para un proceso posterior.

En contraste, la parte apelada arguye que la actuación del foro primario se sostiene en lo decidido en *Costas Elena v. Magic Sport Culinary Corp.*, supra, puesto que la *confusa* alegación de que los árboles se encuentran sembrados "a una distancia menor a la permitida por ley", y la atinente a los consecuentes riesgos para su vida, no superan el estándar de plausibilidad pues tratan de conclusiones de derecho. Es decir, tilda tales alegaciones como generalizadas, hipotéticas y conclusorias, por tanto, insuficientes para justificar la concesión de un remedio.

Por lo que se refiere a la aplicabilidad de la doctrina de cosa juzgada, aduce que, contrario a lo señalado por la parte apelante, lo que el TPI resolvió fue a los fines de que, al momento de dictarse *Sentencia*, la controversia ya había sido objeto de una *Resolución* emitida por el Tribunal Municipal en el caso civil BYL140222-5193 donde se aprobó un plan de poda de árboles. Sobre tal plan de poda, la parte apelada sostuvo que lo ha cumplido a cabalidad. También, esboza que, en el caso DPE2008-1372 promovido por el Consejo de Titulares del Condominio Quintas de Baldwin, cuerpo del cual forma parte la señora Delgado Rivera, se solicitaba, al igual que en el caso de epígrafe, el corte y remoción de los árboles en cuestión,

pero fue desestimado con perjuicio. En definitiva, esgrime que la parte apelante pretende por tercera vez litigar asuntos que ya fueron adjudicados y juzgados entre las partes, y que el plan de poda, como remedio provisional, le ponía fin a la controversia entre vecinos que se había prolongado por 18 años.

b.

Conviene iniciar aclarando que no cabe confundir la figura de cosa juzgada con el examen sobre si unas alegaciones son plausibles, pues son figuras diferentes, principalmente por sus finalidades y porque operan en momentos procesales distintos. En concreto, el referido examen sobre la plausibilidad de las alegaciones contenidas en una demanda es un criterio utilizado por el tribunal *ab initio* con la importante finalidad que adelantamos de "no permitir que una demanda insuficiente proceda bajo el pretexto de que con el descubrimiento de prueba pueden probarse las alegaciones conclusorias". *Trinidad Hernández v. ELA*, 188 DPR 828, 851, (2013). Por ello, debe surgir de la faz de la demanda *hechos suficientes que eleven la reclamación más allá del nivel especulativo y la empujen a través de la línea de lo concebible a lo plausible. Íd.,* pág. 248. Así, no se requiere que la parte demandante presente prueba, pues se dan por ciertas las alegaciones fácticas, y no así aquellas que contengan conclusiones de derecho.

Distinto es el caso de la cosa juzgada, defensa que se debe alegar afirmativamente en la contestación a la demanda, pues de lo contrario se renuncia. Esta requiere de prueba documental, como lo es la presentación de una sentencia previa, para que el tribunal dilucide si le asiste o no tal defensa a la parte que la enarbola. La figura de cosa juzgada cumple el propósito de "impartir finalidad a los dictámenes judiciales de manera que [e]stos concedan certidumbre y certeza a las partes en el litigio". *PR Wire Prod. v. C. Crespo & Assoc.*, 175 DPR 139, 151 (2008).

Explicado lo anterior debe resultar evidente que una reclamación puede ser plausible, pero aun así constituir cosa juzgada. Es decir, de la faz de la

demanda pueden surgir alegaciones que, a la luz de la situación más favorable al demandante y resolviendo toda duda a favor de este, sean suficientes para constituir una reclamación válida en derecho. No obstante, de ser levantada la defensa de cosa juzgada en la contestación a demanda y, evaluarse la sentencia a la que se aluda para sostener su aplicación, puede que la causa de acción resulte desestimada, no por ausencia de plausibilidad de las alegaciones, sino porque se cumplen los requisitos que exige la defensa afirmativa de cosa juzgada.

Entonces, hecha la evaluación de las alegaciones que componen la *Demanda* en este caso las juzgamos sucintas y sencillas, que demuestran que: 1) existe una colindancia entre las respectivas propiedades de la parte apelante y la parte apelada 2) que hay árboles plantados a una distancia menor a la permitida por ley. No obstante, lo cierto es que la parte apelada levantó la defensa de cosa juzgada, por lo que el análisis de la controversia no puede finalizar sin antes evaluar la aplicación o no de tal defensa. Según ya lo hemos apuntado, el TPI aludió a tal defensa para establecer una limitación procesal que impide que se reabra una controversia presuntamente antes dirimida, por vías de una determinación bajo la Ley Núm. 140, *supra.*

En lo específico, en una causa de acción previa, caso BYL1402022-5193, de 17 de enero de 2023, el foro de instancia emitió una *Resolución* en el fijando un estado provisional de derecho respecto a la poda de los árboles que son controversia central en el caso ante nosotros. Concretamente, mediante dicho dictamen se estableció que la señora Rivera Rosado debía mantener podados los cinco (5) árboles sembrados cerca de la verja colindante con la propiedad de la señora Delgado Rivera. Asimismo, en el mismo dictamen se estableció el modo y el término en que se debía ejecutar la referida poda, cuya vigencia sería de un (1) año a partir de la fecha en que fue dictada, advirtiendo que, transcurrido dicho término, la *Resolución* quedaría sin efecto. Del mismo modo, en tal proceso las partes fueron

advertidas sobre su derecho a entablar una acción ordinaria ante el Tribunal correspondiente para enmendar o dejar sin efecto la orden.

Este asunto no merece mayor elaboración para su dilucidación por cuanto, por virtud expresa de la Ley Núm. 140, *supra*, el dictamen inicial de la Sala Municipal aludido **no tiene el efecto de cosa juzgada**. En específico, nos referimos al Art. 5 de la Ley Núm. 140, *supra*, que establece que "[u]na orden resolviendo una controversia y fijando un estado provisional de derecho, según este capítulo, será inapelable, **pero no constituirá cosa juzgada respecto a ninguno de los puntos adjudicados en la misma ni impedirá ningún otro trámite judicial reclamando daños y perjuicios u otro derecho"**. (Énfasis provisto). Es decir, para disponer de esta defensa, no se requería ni siquiera sopesar si entre el caso resuelto mediante sentencia y el caso en que esta se invoca concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad en que lo fueron, pues, simplemente, el dictamen para sostener tal defensa se emitió bajo el proceso de la Ley Núm. 140, y tal estatuto niega tal defensa. Esto es así pues, en el contexto de los pleitos seguidos bajo dicho estatuto, la parte que resulte perdidosa tiene la alternativa de acudir al Tribunal de Primera Instancia para que allí se atienda la controversia por la vía ordinaria.

Dispuesto lo anterior, sin embargo, al enfocarnos en el remedio extraordinario solicitado por la parte apelante en la *Demanda*, el *injunction* preliminar y permanente para el corte y remoción de los árboles, juzgamos que la parte promovente, aquí apelante, no cumplió con los requisitos jurisprudenciales y procesales que hubiesen hecho procedente su concesión. Esto es, al decidir si expide un *injunction* preliminar, el tribunal deberá evaluar los siguientes criterios fijados en la Regla 57.3 de Procedimiento Civil, *supra*:

> … la naturaleza del daño a que está expuesto la parte peticionaria; la irreparabilidad del daño o la inexistencia de un remedio adecuado en ley; la probabilidad de que la parte promovente prevalezca; la probabilidad de que la causa se torne en académica; el impacto sobre el interés público del remedio que se solicita, y la diligencia y la buena fe con que ha obrado la parte peticionaria.

De tales criterios el que resulta determinante para el presente caso, y el que no precisaba la celebración de una vista para su adjudicación, es el de la disponibilidad de un remedio adecuado en ley para su atención. Sobre esto, no hay controversia real que del expediente se desprende que la parte apelante tuvo acceso a un remedio adecuado bajo la Ley Núm. 140, *supra.,* para atender su reclamo, de forma que no cabe aducir la inexistencia de un remedio en ley. En efecto, la parte apelante radicó una querella, se celebró la vista correspondiente, y tuvo la oportunidad de contrainterrogar a la Sra. Nivia Cardona Nieves, representante del DRNA, por lo que se ordenó un plan de poda aprobado por el foro primario que atendió el asunto. Entonces, culminada la vigencia de la *Resolución* resultante, la parte apelante aun cuenta con el procedimiento provisto por la Ley Núm. 140, *supra*, para solicitar la remoción de los árboles sembrados en la colindancia de las propiedades. En definitiva, la parte apelante no se encuentra desprovista de un remedio adecuado en derecho que justificara la consideración del *injuction*, según ello surgía de las propias alegaciones contenidas en la *Demanda*. En consecuencia, el foro primario actuó correctamente al rechazar la solicitud del *injunction* preliminar y permanente.

b.

Por otra parte, es de notar que no toda infracción a una norma jurídica da lugar automáticamente a una causa de acción indemnizable. Así, el mero hecho de que existan árboles plantados en la colindancia entre las propiedades de las partes aquí apelante y apelada, a una distancia menor de la permitida por ley, no conlleva una acción en daños y perjuicios, aunque sí pudiera justificar una solicitud para su remoción. Como señalamos en la exposición de derecho, para imponer responsabilidad civil al amparo del Art. 1536 del Código Civil, *supra,* es necesario que concurran tres elementos esenciales: (1) un daño real; (2) un acto u omisión culposo o negligente y; (3) un nexo causal entre el daño y la acción culposa o negligente. *Sucn. Mena*

*Pamias et al. v. Meléndez*, 212 DPR 758 (2023); *Cruz Flores et al. v. Hosp. Ryder et al.,* 210 DPR 465, 483-484 (2022); *Pérez et al. v. Lares Medical et al.,* 207 DPR 965, 976 (2021).

El Art. 1536, *supra,* y su antecesor Art. 1802, 31 LPRA sec. 5141, han sido interpretados por el Tribunal Supremo a los efectos de que el perjuicio debe ser consecuencia directa de un acto antijurídico que cause un daño cierto, real, y susceptible de valoración económica o resarcible de alguna forma. Véase *Soto Cabral v. ELA*, 138 DPR 298 (1995) y *Weber Carrillo v. ELA*, 190 DPR 688 (2014). Por lo tanto, el foco del análisis no debe recaer únicamente sobre la existencia de la siembra indebida, sino sobre los efectos concretos y verificables que ello ha producido.

Con arreglo a lo anterior, en la *Demanda* la parte apelante identifica daños derivados de la presencia de los árboles a una distancia menor a la permitida por ley. A saber, en las alegaciones número 15 y 16 indica que las raíces de los árboles han penetrado a su patio, que traspasan insectos y que no crece grama. A pesar de ello, no podemos categorizar estas alegaciones propiamente como daños indemnizables, según redactadas.

A su vez, la señora Delgado Rivera alega haber sufrido otros daños como el que se tapen los drenajes frecuentemente por la erosión y las hojas. Sin embargo, no precisó fechas o eventos recientes que nos permitan delimitar un punto de partida para computar el periodo prescriptivo.

A modo de excepción, la parte apelante incluyó una inundación que surgió el 10 de octubre de 2022, pero la causa de acción por estos daños se encontraba prescrita al presentarse la *Demanda* el 19 de julio de 2024, es decir, en exceso del término de un año que dispone el Art. 1204 del Código Civil, 31 LPRA sec. 9496, para exigir responsabilidad extracontractual. Lo mismo ocurre respecto a los incidentes contenidos en la alegación número 12 donde articula que, el 19 de septiembre de 2022, una rama de más de 20 pies de largo cayó en su patio y le causó daños a la propiedad, sin mencionar cuales. En la alegación número 13 aduce que, en febrero de 2023, sin

especificar el día, cayó otra rama que deformó las rejas de su residencia y le causó un estado de ansiedad. En suma, los incidentes así alegados están prescritos.

Cónsono con lo dicho, las alegadas angustias mentales están vinculadas a eventos puntuales que, según la propia parte apelante, ocurrieron entre 2022 y 2023. Esta misma parte reconoce que las presuntas angustias mentales se originaron como reacción emocional a la caída de ramas dentro de su propiedad.[4] Así, interpretamos que no se reclama la angustia mental como un evento independiente ni sostenido, sino como una secuela emocional derivada de hechos prescritos. Por lo tanto, estas causas están igualmente prescritas.

Reiteramos que, para que opere la doctrina de daño continuado es indispensable que la conducta antijurídica -acto u omisión-, y no meramente el daño, sea de carácter continuo y produzca daños ciertos actuales o previsibles. Véase *Landrau Cabezudo et al. v. Puertos et al.*, supra. En estos casos **lo continuo o progresivo no es el daño o perjuicio ocasionado, sino la causa que lo origina y que produce resultados razonablemente previsibles.** *Íd.* Por consiguiente, es improcedente alegar angustias mentales como daño continuado con el fin de mantener viva una causa de acción.

Por último, consideramos que dichas alegaciones son generales y especulativas, pues no hacen referencia a una descripción concreta del daño emocional como, por ejemplo, un tratamiento o diagnóstico. Debemos recordar que para que proceda una reclamación por daño moral "es imprescindible probar sufrimientos y angustias morales profundas y no bastaría una pena pasajera como base de la acción". *Rivera v. SLG Díaz*, 165 DPR 408, 432 (2005).

En virtud de lo explicado, juzgamos que no incidió el foro apelado al acoger la moción de desestimación que tuvo ante su consideración, por lo

---

[4] Véase alegaciones número 12 y 13.

que procede la confirmar el dictamen apelado, aunque por los fundamentos aquí explicados.

## IV. Parte dispositiva

Por los fundamentos que anteceden, se *Confirma* la *Sentencia* apelada.


Lo acordó y manda el Tribunal y lo certifica su Secretaria.




Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones